# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF:**

**BLACK HYUNDAI, BEARING**
**MARYLAND LICENSE PLATES 4DC6458**

**Case No. _____**

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Steven Letteney, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Washington Field Division, Washington, D.C. (hereinafter "Affiant"), being duly sworn, deposes and states as follows:

## INTRODUCTION

1.       Your affiant is a Special Agent with the ATF, and has been so employed since October 2014.  Before my employment with ATF, your affiant was a Special Agent with the U.S. Department of State, Diplomatic Security Service, for approximately five years.  Your affiant is an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code. Your affiant has received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, search and seizure, and asset forfeiture.  Your affiant has also been involved in gang, organized crime, money laundering, and drug investigations, including the possession with intent to distribute and distribution of controlled substances, and

conspiracies and offenses associated with the foregoing criminal offenses which are prohibited by Title 21, United States Code, Sections 802(32), 813, 841(a)(1) and 846, Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Sections 922(g), 924(c), 1956 and 1957 and Title 26, United States Code, Section 5861(d) among others.

2.      Your affiant is presently assigned to Group III of the Washington Field Division of the ATF in Washington, D.C.  This particular Group investigates violent street gangs and crews in Washington, D.C. in which most members are involved in the distribution of narcotics, which also may involve firearms and the illegal trafficking of firearms.  In the course of my training and experience, your affiant has become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies.  In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing caller identification system data; and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

3.      This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4.      Through instruction, training, and participation in investigations, as well as through consultation with other agents and law enforcement personnel, your Affiant has become familiar with the manner and methods by which persons in the possession of prohibited firearms

2

store, keep, transfer, and use firearms.   In addition, through instruction, training, and participation in investigations, as well through consultation with other agents and law enforcement personnel, your Affiant has become familiar with the manner and methods by which narcotics traffickers conduct their illegal business, including the transportation of narcotics from importers to wholesalers and from wholesalers to street level dealers, as well as the packaging and hiding of narcotics, payment methods for narcotics, and laundering of proceeds of illegal narcotics transactions.   Based upon your Affiant's training and experience, your Affiant knows:

a.      Individuals who deal in illegal controlled substances keep such controlled substances, as well as paraphernalia, in their residences, vehicles and in other locations, referred to as "stash houses."   In addition, such individuals maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances.   These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained in locations to which the dealers in illegal controlled substances have ready access, such as in secure locations within their vehicles, residences and their curtilage, the vehicles and residences of family members, friends and associates, the places of operation of their drug distribution activities, such as stash houses or safe houses, in business locations with which the trafficker is associated, or in storage areas.   I know that individuals involved in narcotics distribution often maintain these records for lengthy periods of time, and often hide them in places in their homes to avoid detection.   Further, these individuals who deal in illegal controlled substances often store hard copy and electronic records associated with their illicit narcotics trafficking for long periods of time.

b.      Individuals who deal in illegal controlled substances routinely conceal in their vehicles, residences and/or curtilage, vehicles, the vehicles and/or residences of family members, friends and associates, as well as their business locations, storage areas, and/or in the places of operation of their drug distribution activities, such as stash houses or safe houses, large quantities of currency, financial instruments, precious metals, jewelry, and other items of value, typically proceeds of illegal controlled substance transactions.  Individuals who purchase and sell large amounts of illegal controlled substances often maintain a significant amount of narcotics proceeds in their homes and/or vehicles.  These individuals maintain cash in their homes, rather than depositing that money into a bank or other financial institution, in an attempt to avoid detection by law enforcement or by institutions that report to law enforcement.

c.      Individuals who deal in the sale and distribution of controlled substances commonly maintain telephone numbers and address books or papers that reflect names, addresses and/or telephone numbers for their associates in their illegal organization.  These individuals often utilize cellular telephones, social media, and telephone systems to maintain contact with their associates in their illegal businesses.  These telephone records, bills, and numbers are often found in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses, vehicles or storage areas.

d.      Individuals who deal in illegal controlled substances often take photographs of themselves, their associates, their property, and illegal contraband.  These photos are usually maintained in their place of residence, or the residences of family members, friends or associates,

in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses, or storage areas.

e.     Persons who traffic in controlled substances maintain documents and records relating to their illegal activities for long periods of time.  This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses or safe houses, or in storage areas.  This documentary evidence includes, but is not limited to, telephone numbers, telephone books, address books, credit card and hotel receipts, airplane and bus tickets and receipts, car rental receipts, amounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions, and records indicating the existence of storage facilities used in narcotics trafficking.

f.     Individuals who are members of ongoing drug organizations stay in regular contact with one another.  This contact does not terminate once an individual is incarcerated. Incarcerated members of drug organizations routinely send letters to and receive letters from other members of the organization in which they discuss ongoing criminal activities and request various forms of assistance, from financial help to help in engaging in witness intimidation or elimination.  In addition, incarcerated members often keep photographs of themselves and other members of their organization in order to obtain respect from other inmates.

g.     Drug traffickers will often store firearms near their illegal narcotics to protect the enterprise from other traffickers and law enforcement.  Drug traffickers who own or possess firearms and ammunition, also keep other firearms related equipment, to include ammunition magazines, holsters, bullet proof vests, pistol grips, boxes, cleaning kits and paperwork relating

to the acquisition an disposition of firearms.  Drug traffickers keep firearms, ammunition and their accessories secreted within their vehicles, residences, and the residences/vehicles of others for extended periods of time.  Lastly, drug traffickers do not usually carry their entire inventory of ammunition or equipment while carrying their firearms on their person, but will keep their available ammunition and magazines in their residence for future use.

h.      Persons who possess or collect prohibited firearms commonly maintain prohibited firearms at their residence, on their person, and that these persons commonly maintain prohibited firearms for extended periods of time.

i.      Persons who possess or collect prohibited firearms commonly maintain items that are related to the purchase, ownership and/or possession of prohibited firearms, firearm parts and/or ammunition at their residence. These persons commonly maintain items that are related to the ownership and possession of prohibited firearms, firearm parts, ammunition, ammunition magazines, holsters, bullet proof vests, pistol grips, firearms boxes, cleaning kits, parts kits, firearms related tools, equipment used for the firearms tooling and manufacturing, paperwork relating to any of the above, paperwork relating to the acquisition and disposition of prohibited firearms and/or firearms parts utilized in the manufacture of prohibited firearms.

j.      Persons who possess prohibited firearms maintain books, records, receipts, notes, ledgers, bank records, money orders, pictures, videos, electronic files/data, computers and/or papers relating to the importation, manufacture, transportation, ordering, sale and/or distribution of prohibited firearms, firearms parts and supplies necessary for the manufacture of firearms. This evidence is maintained in locations which the traffickers have ready access, such as within their residences and on the surround curtilage; the places in which they conduct their illicit

activities, such as stash houses or safe houses; in their business locations with which the trafficker is associated; and/or in storage areas.

k.      Persons who possess illegal firearms maintain documents and records relating to their illegal activities for long periods of time.  This documentary evidence is usually secreted within their residence and the surrounding curtilage; their vehicles; the residences of family members, friends and/or associates; the places in which they conduct their illicit activities, such as stash houses or safe houses; in their business locations with which the trafficker is associated; and/or in storage areas.

5.      Your Affiant is currently participating in a long-term investigation concerning a large-scale narcotics trafficking organization based in the Northeast quadrant of Washington, D.C.  During the investigation, DERRICK BOYD, also known as "Fat Derrick" ("BOYD"), was identified as a leader and supplier of a drug trafficking organization based in the 300 block of 18th Place, N.E., Washington, D.C.  During the course of the investigation, law enforcement utilized an undercover officer ("UC") to make a series of controlled purchases of illegal narcotics from BOYD.  The UC conducted seven controlled purchases from BOYD in the District of Columbia on the following dates: October 24, 2017; November 8, 2017; December 12, 2017; January 24, 2018; February 7, 2018; March 13, 2018; and April 10, 2018.  In addition, between March 7, 2018, and September 21, 2018, law enforcement received several judicial authorizations to intercept wire and electronic communications over four different cellular telephones utilized by BOYD and authorization to intercept wire communications over one cellular telephone utilized by BOYD.  Among those authorizations, the Court authorized

interceptions of BOYD's telephone number (202) 749-3516, Target Telephone #10 ("TT-10").
Interceptions of TT-10 began on September 21, 2018, and ended on October 1, 2018.

6.      The investigation demonstrates that BOYD supplies co-conspirators with large-scale quantities of controlled substances to redistribute in the Washington, D.C. metropolitan area, including Prince George's County and Montgomery County, Maryland; that these conspirators have used various locations, both known and unknown to law enforcement at this point, to stash drugs, firearms and other assets associated with their criminal network; and that BOYD and others have attempted to possess and potentially use firearms in furtherance of their criminal activities.

7.      On September 25, 2018, a grand jury for the United States District Court for the District of Columbia returned an indictment charging that between in and around October 2017 through in and around September 2018, BOYD and numerous other individuals conspired to distribute and possess with the intent to distribute controlled substances in the District of Columbia and elsewhere.  The indictment further charged that in or about October 2017, the exact date being unknown to the Grand Jury, and continuing up to and including September 2018, within the District of Columbia and elsewhere, BOYD, did unlawfully, knowingly, and intentionally engage in a continuing criminal enterprise.  In addition, the grand jury returned two additional indictments each charging BOYD with conspiracy to engage in the business of dealing firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A), 371.

8.      On September 28, 2018, at approximately 12:11 p.m. (TT-10, Activation #1961), BOYD placed an outgoing call from TT-10 to a male referred to as "AKH" on 310-554-9223. During the course of the call, AKH stated, "I was about to get from him what I'm about to give

you, though – the 2-5-0.  That cool?"  BOYD replied, "You said, 2-5-0?"  AKH replied, "Yeah."
BOYD responded, "Alright.  That's a bet, just hit me when you are ready."  Based on training
and experience, your Affiant understands that AKH informed BOYD that AKH was going to
obtain and provide BOYD with 250 grams of narcotics.

9.      Following   this   conversation,   law   enforcement   intercepted   subsequent
conversations between BOYD on TT-10 and "AKH" on 310-554-9223.  During the course of
these conversations, BOYD and AKH agreed to meet near the Stadium/Armory Metro Station on
19th Street, S.E., at a set time.

10.      At that location, at the agreed upon time, law enforcement observed a black
Hyundai, bearing Maryland license plates 4DC6458 (**TARGET VEHICLE**), at the location.
Law enforcement observed an individual later identified as SHAMELL ROMEO ATKINS, also
known as SHAMELL J. RIJFKOGEL ("ATKINS") for a period of time and observed ATKINS
utilizing a cell phone.[1]  In addition, law enforcement intercepted a phone call from BOYD on
TT-10 to ATKINS on 310-554-9223 at the same time that ATKINS was observed using the cell
phone.

11.      Law enforcement was familiar with the aforementioned vehicle because, on July
10, 2018, law enforcement observed the same vehicle arrive in the 300 block of 18th Place, N.E.,
Washington, D.C.  On that date, law enforcement observed a black male exit the Hyundai and
enter 316 18th Place, N.E., which, based on the investigation and intercepted communications,
your Affiant knows to have been used as a stash house by BOYD.

---

[1] Your Affiant knows ATKINS to be a prohibited person for purposes of Title 18, United States
Code, Section 922(g).

9

12.     On September 28, 2018, law enforcement then approached ATKINS, who was by

the **TARGET VEHICLE**.  Law enforcement briefly detained ATKINS while a law enforcement

officer placed a call to 310-554-9223.  At that time, law enforcement heard a cellphone ring

inside the **TARGET VEHICLE**.  Law enforcement then conducted a search of the vehicle.

Based on training and experience, your Affiant believes ATKINS to be the individual intercepted

over TT-10 as "AKH."   During the course of the search, law enforcement located the

approximately 254 grams of a white rock-like substance suspected of being cocaine base (*i.e.*,

crack cocaine) secreted near the center console.  Directly beneath the suspected cocaine base,

law enforcement agents located the following:  a Smith & Wesson M&P Bodyguard .380 caliber

semi-automatic firearm, bearing serial KEP8502, containing no round in chamber, and 4 rounds

of .380 ammunition in the magazine.  The suspected crack cocaine field-tested positive for the

presence of cocaine; however, based on your Affiant's training and experience, it is consistent

with the appearance of cocaine base.[2]   Moreover, based on training and experience and

knowledge of this investigation, your affiant understands that this represents the 250 grams of

narcotics that ATKINS agreed to supply to BOYD in <u>Activation # 1961</u>.[3]

---

[2] Your Affiant notes that the field-test kits readily available to Special Agents do not differentiate between cocaine hydrochloride (powder cocaine) and cocaine base (crack cocaine).  Rather, the field-test kits merely test for the presence of cocaine.

[3] Note also that, through the course of this investigation, law enforcement identified a residence used by ATKINS at 14320 WEST SIDE BLVD, APARTMENT #211, LAUREL MD 20746. Also on September 28, 2018, law enforcement agents executed a United States District Court for the District of Maryland, Search and Seizure Warrant issued by the Honorable Timothy J. Sullivan at that location.  During the search of this residence, agents recovered 98.8 grams (weighed with packaging) of a brown substance that field tested positive for the presence of

13.     On October 2, 2018, the grand jury returned an indictment charging ATKINS with (1) Unlawful Possession with Intent to Distribute 28 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); (2) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); and (3) Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1).

14.     Further, note that the white rock like substance and the firearm that were found in the **TARGET VEHICLE** were secreted in a location that was not readily identifiable as a common storage area within the vehicle (e.g., the glovebox or compartment under the armrest of a vehicle).  Rather, the law enforcement agent had to remove a piece of the car's dash to find the items.

15.     After the arrest of ATKINS, the **TARGET VEHICLE** was taken to a secure Federal Bureau of Investigation facility located at 2800 V Street Northeast, Washington, D.C., where it remains to this date.

16.     Due to nature of the location which the items were found and the constraints put on law enforcement agents conducting a road-side search of a vehicle, your affiant requests the Search and Seizure Warrant to be issued by the Court.  This warrant will allow agents to conduct a more thorough and complete search for additional items further described in attachment B.

---

heroin, 21.8 grams (weighed with packaging) of a white powder substance that field tested positive for the presence of cocaine, and a large sum of U.S. currency.

## <u>CONCLUSION</u>

17.    I submit that this Affidavit supports probable cause for a warrant to search the vehicle described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

_____
Steven Letteney
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me
on October _____, 2018:

_____
Honorable Deborah A. Robinson
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF:

**BLACK HYUNDAI, BEARING**          Case No. _____
**MARYLAND LICENSE PLATES 4DC6458**

<u>**ATTACHMENT A**</u>

**PROPERTY TO BE SEARCHED**

The property to be searched is a black in color, Hyundai, bearing Maryland license plates 4DC6458, that is currently located at a Federal Bureau of Investigation facility at 2800 V Street Northeast, Washington, D.C.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>**BLACK HYUNDAI, BEARING**<br>**MARYLAND LICENSE PLATES 4DC6458** | Case No. _____ |

## ATTACHMENT B

## PROPERTY TO BE SEIZED

The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of: conspiracy to distribute and possess with intent to distribute narcotics, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; carrying, using, or possessing a firearm in connection with a crime of violence or drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and unlawful possession of a firearm and ammunition by a prohibited person, in violation of Title 18, United States Code, Section 922(g), as described in the search warrant affidavit, including but not limited to:

1.	Books, records, receipts, notes, ledgers, and other papers including any computerized or electronic records, relating to the transportation ordering, purchase, manufacture, sale, transfer and/or possession of firearms.

14

2.     Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers including computerized or electronic address and/or telephone records.

3.     Books, records, receipts, bank statements and records money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks, and any other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and expenditures of money.

4.     Photographs, in particular, photographs of firearms and/or associates and co-conspirators, and other documents identifying associates and co-conspirators.

5.     Indicia of occupancy, residence and/or ownership of the vehicle, including but not limited to, utility and telephone bills, canceled envelopes, identity documents, other mail matter and keys.

6.     Controlled substances, including but not limited to, cocaine, cocaine base, and heroin.

7.     Any evidence of participation in narcotics conspiracy.

8.     Any and all electronic data processing and storage devices or other electronic equipment, such as computers, computer systems, keyboards, central processing units, external and/or internal drives, external and internal storage devices such as magnetic tapes and/or disks or diskettes, together with system documentation, operating logs and documentation, software and instruction manuals, passwords, test keys, and encryption codes or similar codes that are necessary to access computer programs, facsimile machines, telephone answering machines,

telephone paging devices, caller identification, organizers, currency counting machines, and any other information stored in memory or contained in any related hardware and software.

9.      Cellular telephones, pagers, tablet computers and/or records and receipts reflecting their ownership and use.

10.     Firearms, firearm parts, ammunition, ammunition magazines, holsters, bullet proof vests, pistol grips, firearms boxes, cleaning kits, parts kits, firearms related tools, equipment used for the firearms tooling and manufacturing, paperwork relating to any of the above, paperwork relating to the acquisition and disposition of firearms and/or firearms parts utilized in the manufacture of firearms.

11.     Any evidence related to possession, manufacture, transfer and/or sale of firearms, including but not limited to revolvers, semi-automatic pistols, rifles, ammunition, magazines, bulletproof vests, and firearms-related paraphernalia including but not limited to gun-cleaning kits, gun-sights, holsters, receipts and documentation for the purchased of same, and related firearm paraphernalia.

12.     Any locked or closed containers believed to contain any of the above listed evidence.